**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| BETTY JO SCHAEFER | ) | CASE NO.  18-10519 |
| | ) | Chapter 7 |
| DEBTORS. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

Martin E. Seifert, Trustee, certifies that on the 29th day of October, 2018, a true and correct copy of the attached Notice of Motion and Opportunity to Object was served, via the court's electronic case filing system, or first-class U.S. Mail, postage prepaid, to those creditors and interested parties listed on the attached sheet(s).

**Respectfully submitted,**

**CHAPTER 7 TRUSTEE**
**444 EAST MAIN STREET**
**FORT WAYNE, INDIANA 46802**
**TELEPHONE: (260) 426-0444**
**FAX: (260) 422-0274**
**EMAIL: mseifert@hallercolvin.com**

**BY:/s/ Martin E. Seifert_____**
        **MARTIN E. SEIFERT**
        **I.D. #16857-02**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

IN THE MATTER OF:                    )
                                     )
BETTY JO SCHAEFER                    )        CASE NO.  18-10519
                                     )        Chapter 7
                    DEBTORS.         )
                                     )

### NOTICE OF MOTION AND OPPORTUNITY TO OBJECT

On October 29, 2018, Martin E. Seifert, Trustee, filed his Application to Retain BK Global Real Estate Services and Coldwell Banker Roth Wehrly Graber to Procure Consented Public Sale Pursuant to 11 U.S.C. §§ 327, 328 and 330 asking the Court to authorize the Trustee to hire BK Global and Roth Wehrly Graber as realtors for the sale of real estate commonly known as **15333 Towne Gardens Ct., Huntertown, Indiana 46748** owned by the Debtor and to pay administrative expenses upon sale of the real estate pursuant to the Listing Contract.  A copy of the Application is attached.

**Your rights may be affected**. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

If you do not want the Court to grant the motion, then on or before **November 19, 2018**, you or your attorney must:

1.      File a written objection to the motion, which should explain the reasons why you object, with the Clerk of the United States Bankruptcy Court at:

            1300 South Harrison Street
            Fort Wayne, Indiana   46802

If you mail your response to the Court, you must mail it early enough so that it will **be received** by the date it is due.

2.      You must also mail a copy of your objection to:

            Martin E. Seifert, Trustee
            444 East Main Street
            Fort Wayne, Indiana 46802

            U.S. Trustee
            555 One Michiana Square
            100 East Wayne Street
            South Bend, Indiana 46601

Steven J. Glaser, Esq.
Glaser & Ebbs
132 East Berry Street
Fort Wayne, Indiana 46802

If you do not file an objection by the date it is due, the Court may grant the relief requested without holding a hearing.  If you do file an objection, the Court will set the motion for hearing, which you or your attorney will be expected to attend.

**DATED**: October 29, 2018

**Respectfully submitted,**

**CHAPTER 7 TRUSTEE**
**444 EAST MAIN STREET**
**FORT WAYNE, INDIANA 46802**
**TELEPHONE: (260) 426-0444**
**FAX: (260) 422-0274**
**EMAIL: mseifert@hallercolvin.com**

**BY:/s/ Martin E. Seifert_____**
      **MARTIN E. SEIFERT**
      **I.D. #16857-02**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

IN THE MATTER OF:     )
                       )      **CASE NO. 18-10519**
BETTY JO SCHAEFER,    )      **Chapter 7**
                       )
     DEBTOR.       )

## CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND COLDWELL BANKER ROTH WEHRLY GRABER TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 AND 330

**Martin Seifert**, as Chapter 7 Trustee (the "Trustee") for the above referenced debtor(s) (together, the "Debtor"), by and through the undersigned counsel, files this Application for entry of an order, substantially in the form attached hereto as ***Exhibit A***, authorizing retention of (1) BK Global Real Estate Services ("BKRES") and (2) Coldwell Banker Roth Wehrly Graber  ("Listing Agent") under the terms of the agreement (the "Listing Agreement") attached to Listing Agent's Declaration of Realtor at ***Exhibit B*** (the "Listing Agent Affidavit").  In support thereof, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

Trustee requests approval to retain BKRES and local licensed Listing Agent (individually and collectively referred to as "Broker or Brokers"), at no cost to the estate, to negotiate with and persuade the first lienholder on certain real property in which the estate has no equity to (1) allow Trustee to sell such property at the highest price that the market will bear, (2) waive the resulting deficiency claim and (3) pay an 11 U.S.C. § 506 surcharge to provide a carveout for the benefit of the estate and pay all other sale expenses, including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court.

1

BKRES and its affiliates have proprietary technology and a national team of experienced loan servicing specialists, asset managers, negotiators, trustee relation managers, real estate brokers and agents, closing specialists and attorneys with extensive experience in procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

The proposed agreements are attached and provide that BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as an 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carveout for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain secured creditor's agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

<u>JURISDICTION</u>

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

<u>BACKGROUND</u>

3.      On March 29, 2018, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4.      Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

5.      The Trustee held and concluded the 341 meeting on May 9, 2018.

6.      The Debtor is the sole owner of real property located at **15333 Towne Gardens Ct, Huntertown, IN 46748** (the "<u>Property</u>").

7.      The Debtor has no equity in the Property.  The Debtor's schedules reflect that the Property is currently worth $130,000.00 but is subject to a first mortgage lien (the "<u>Senior Mortgage</u>") in favor of CHASE (the "<u>Secured Creditor</u>") in an amount exceeding $140,000.00.

8.      The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("<u>Consent</u>") to do the following, with the proviso that the hired professionals, BKRES and Local Agent, shall not participate in the sale and purchase of any estate property except as hired Brokers:

> a.  sell the Property under 11 U.S.C. § 363(b) to whichever third party you determine to have made the best qualified offer during a public sale approved by the court;

3

b.  release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

c.  agree to a 11 U.S.C. § 506 surcharge to pay all of the customary expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a meaningful carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

9.      Trustee expects BKRES and Listing Agent to obtain Secured Creditor's full, final and unconditional Consent and bring a separate motion seeking an order approving the sale of the Property (the "Motion to Approve Sale") within several months of the entry of the order sought by this Application.

10.      By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to **provide the necessary professional assistance and representation required by the Trustee to fulfill the Trustee's duties pursuant to 11 U.S.C. § 704 in order to** procure Secured Creditor's Consent, (b) engage Brokers BKRES and Listing Agent to provide reasonable and necessary property preservation, maintenance, and upkeep services to the subject estate Property to facilitate the sale of the Property for the benefit of the Secured Creditor(s) and bankruptcy estate, (c) reimburse Brokers in the maximum amount not to exceed $500.00 for any approved, out-of-pocket costs incurred by Brokers associated with property preservation, maintenance, and upkeep of the subject Property in connection with a potential sale, upon the availability of funds from the estate, without the need for further Order, and (d) approve Secured Creditor's payment of the fees described herein and

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

<u>APPLICATION</u>

11.    Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 330 of the Bankruptcy Code permits the Court to "award to a trustee... or a professional person employed under section 327...(A) reasonable compensation for actual, necessary services rendered [by such party]... and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

12.    As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity.

13.    The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear. The Trustee further believes that such a sale is in the best interest of the Debtor's estate, but can only be achieved if Secured Creditor's Consent is first obtained. That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

14.    In no event will the estate have any obligation to pay BKRES or Listing Agent for their services, or to pay for customary title and closing services.   The terms of the BKRES Agreement and Listing Agreement and this Application provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission and obtain reimbursement of any out-of-pocket expenses and payment for all other expenses associated with the sale of the Property from the sale proceeds at closing in accordance with the order approving the sale.

15.    BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

16.    The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

17.    BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Attached hereto as *Exhibit A* is an Affidavit of Disinterestedness of BKRES.  BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent, or a buyer's Agent, if applicable.

18.    Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Attached hereto as *Exhibit B* is an affidavit of disinterestedness of Listing Agent.  Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES, or a buyer's Agent, if applicable.

6

<u>CONCLUSION</u>

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement and this Application pursuant to 11 U.S.C. §§ 327, 328(a) and 330.

Dated:  October 29, 2018

Respectfully submitted,

**CHAPTER 7 TRUSTEE**
**444 EAST MAIN STREET**
**FORT WAYNE, INDIANA 46802**
**TELEPHONE: (260) 426-0444**
**EMAIL: mseifert@hallercolvin.com**

BY: **/s/ Martin E. Seifert**
     **MARTIN E. SEIFERT**
     **I.D. #16857-02**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the above and foregoing Trustee's Application to Retain BK Global Real Estate Services and Roth Wehrly Graber to Procure Consented Public Sale Pursuant to 11 U.S.C. §§ 327, 328 and 330 has been sent by first class, United States mail, postage prepaid, or electronically by the Court's electronic filing system, this 29th day of October, 2018 to:

Steven J. Glaser, Esq.
glaser.bankruptcy@frontier.com

U.S. Trustee
USTPRegion10.SO.ECF@usdoj.gov

/s/ Martin E. Seifert
**MARTIN E. SEIFERT**

7

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| | : | Case No. 18-10519 |
| | : | |
| | : | |
| Debtor | : | |
| Betty Schaefer | : | |
| | : | |

**DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION
TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND COLDWELL BANKER
ROTH WEHRLY GRABER TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO
11 U.S.C. § 327, 328 AND 330**

The undersigned, Patrick Butler ("Declarant") hereby states:

1.      I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"), which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487. I am Applicant's broker-in-charge and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2.      Based upon the information discussed below, I believe that Applicant is a disinterested person and does not hold or represent any interest adverse to the interest of the Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3.      To the best of my knowledge: (a) neither BKRES nor any of its employees has any connection with the Debtor, its creditors in this case, the Chapter 7 Trustee, the Office of the United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and each of its employees are "disinterested persons," as that term is defined in Section 101(14)

1

**Exhibit A**

of the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

3.    A description of the qualifications of, and services provided by, BKRES is attached as Schedule 1.

4.    That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

5.    That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as fully set forth in the BKRES Agreement that is attached as Schedule 2 hereto, as it deems appropriate.

Verified under penalty of perjury that the foregoing is true and correct this __30__ day of July, 2018.

_____
Patrick Butler
Broker-in-Charge


The foregoing instrument was sworn to and subscribed before me this __30th__ day of July, 2018, by Patrick Butler who provided identification or is personally known to me and who did take an oath.

NOTARY PUBLIC

_____
Notary Public, State of Florida


My Commission Expires


Notary Public State of Florida
Lyda Castro
My Commission FF 905572
Expires 08/03/2019

2

## SCHEDULE 1

## STATEMENT OF QUALIFICATIONS AND SERVICES OF BKRES

BK Global™

BK Global™ is a national company with a bankruptcy service platform containing a network of certified BK real estate Brokers and Agents, a national marketplace for listing and submitting bankruptcy real estate purchase offers (www.bkglistings.com), and a centralized team of loan servicing specialist that enable Federal Trustees to streamline and manage their real estate needs most effectively for the benefit of the bankruptcy estate and unsecured creditors. By integrating its unique services and implementing its proprietary tools, BK Global is poised to create industry standards and efficiencies.

Consented Sale™

A Consented Sale™ is an "enhanced" agreement between all requisite stakeholders, the most important being the lender/servicer, of a residential or commercial property for less than what the owner still owes on the mortgage. A Consented Sale™ is a beneficial alternative to foreclosure when a homeowner needs to sell and can no longer afford to make their mortgage payments. The lender agrees to accept less than the amount owed to pay off a loan now rather than taking the property back by foreclosure and trying to sell it later. Lenders agree to a Consented Sale™ because they believe it will net them more money than going forward with a lengthy and costly foreclosure process.

BK Score™

BK Score™ is generated from a finite set of data points in a prescribed sequence to achieve a resulting score between the values of 1 and 100. The BK Score™ is shared with trustees, servicers, courts, and software management platforms and indicates the likelihood that an asset in a bankruptcy is qualified for consented disposition. The higher the BK Score™ there is a better chance to sell the property. In addition to the presented scores, BK Global provides the trustee a solution to sell the asset which maximizes the benefit to the estate. BK Global™ is at the forefront of creating new industry standards for trustee services.

To consistently measure and predict market value of real estate assets nationally, in an ever changing and fluid real estate market, it is important to have a well-defined methodology that explains how values are derived. The BK Score™ uses multiple data points to predict sales confidence compared to the limited local market inputs used by real estate brokers who are not certified in short sales. BK Score™ incorporates a number of unique methodology questions that include the data points listed below.

3

**Highlighted BK Score™ Data Points**

- Asset Value / Liabilities / Liens
- Judicial / Non-judicial State Analysis
- Pro Se (Professional Legal Representation)
- Title Search
- Statement of Intent by Debtor
- Foreclosure Timeline Analysis
- Redemption Period Analysis
- Community / Non-community Asset
- Asset Valuation Model (AVM)

## BK Score™ Core Benefits

**Increased Confidence of a Consented Short Sale** – BK Score™ gives lenders, servicers and real estate professionals more precise information on which to determine baseline sales values to achieve a successful consented short sale.

**Accelerates the Short Sale Decision Process** – Technology that utilizes scoring systems allows lenders/servicers to make instant valuation and sales consent decisions. This is notable as applications for consented sale of property can be approved by lenders/servicers in hours rather than weeks for sales values which score above a lender's score cutoff.

**Reduces Risk of Completing a Cooperative Short Sale** – There are certain barriers to a short sale. Servicers are frequently wary of short sale offers because of concerns that they are settling the debt at too low a price. Greater probability that servicers will consent to a short sale is made possible thanks to BK Score™. The BK Score™ empowers any lender/servicer to quickly set a cut off price and begin the short sale process, without time-consuming phone calls, faxed documents, or any effort from the agent or trustee.

**Increases Transaction Transparency** – BK Global™ is integrated with most major lender/servicers nationally. The BK Score™, which has revolutionized the default servicing industry, helps servicers select and execute optimal baseline valuations based on measurable guidelines while driving efficiency, fostering transparency and facilitating compliance. With the use of BK Score™ agents and trustees can quickly collaborate and determine an appropriate list price that allow agents to begin pursuing sales offers with confidence.

The BK Score™ algorithm has been developed by industry experts that have over 30 years of experience in Distressed Real Estate and Bankruptcy Sales. To date, over 2 years of bankruptcy assets have been analyzed and scored using the BK Global Scoring system. BK Score™ is a trademark pending registration with the US Trademark and Patent Office.

## SCHEDULE 2

### AGREEMENT BETWEEN BKRES AND THE CHAPTER 7 TRUSTEE

[Attached]



Monday October 29, 2018

Martin Seifert
Chapter 7 Trustee
444 East main Street
Fort Wayne, IN 46802
E-mail: mseifert@hallercolvin.com

Re:    Betty Schaefer
       Agreement to Negotiate Real Estate Sale for 15333 TOWNE GARDENS CT HUNTERTOWN,
       IN 46748

Dear Trustee Seifert:

This letter confirms the Agreement to Negotiate a Real Estate Sale for the referenced property ("Property") and confirms the undersigned's ("our," "we" or "us") agreement to negotiate a Real Estate Sale on the following terms and conditions (collectively, the "Agreement") with the provision that the hired professionals, BKRES or Local Agent, shall not participate in the sale and purchase of any estate property except as hired brokers:

1.    Following your signature approving this Agreement, we and our affiliate, Bankruptcy Global Holdings, LLC, D/B/A Bk Global will make commercially reasonable efforts to procure the consent and agreement ("Consent") of the senior mortgagee ("Secured Creditor") to:

    a.    sell the Property under 11 U.S.C. § 363(b) to whichever third party you determine to have made the best qualified offer during a public sale approved by the court or agree to 11 U.S.C. § 363(k) and place a credit bid on the Property from the estate;

    b.    release its lien with respect to the Property; and

    c.    agree to a 11 U.S.C. § 506 surcharge to (x) pay our fee and expenses, any commission payable to the local real estate broker and all other fees and expenses associated with the sale, and (y) provide a carve-out for the benefit of allowed unsecured creditors of the estate.

2.    We will select a local real estate broker to co-list the property. You will retain both BK Global and the local real estate broker to market the Property for sale to the public under a separate listing agreement. We will assist them by coordinating all aspects of the listing and sale process that involve Secured Creditor's Consent. We will also prepare and deliver any and all reports and information about the Consent, listing and sale process that you reasonably require. However, the local listing broker will be solely responsible for providing you with all other brokerage services associated with selling the Property, including inspecting it to confirm condition and occupancy, preparing any comparative market analysis and/or Broker's Price Opinion (BPO), recommending a listing price, preparing marketing materials, including photographs and sign-age, and displaying the same at the Property and on the Multiple Listing Service, conducting all open houses and showings, and helping you evaluate and negotiate purchase offers, all at their sole cost and expense.

1

**Martin Seifert, Trustee**
**Agreement to Negotiate Consented Sale**
**15333 TOWNE GARDENS CT HUNTERTOWN, IN 46748**
**Betty Schaefer**

3.      The term of this Agreement will commence when you sign and return a copy of this letter and the court approves it.  This Agreement will automatically terminate upon the closing of the sale of the Property, or it may be terminated by either party for any or no reason after 180 days from commencement. In addition, this Agreement will be terminated if the Chapter 7 Trustee files a Report of No Distribution, files a Notice of Abandonment of the subject property, or submits a Trustee's Final Report to the Office of the United States Trustee.

4.      There will be no fees due to, or payable by, either party under this Agreement, and neither party will be reimbursed by the other party for any cost or expense.  Subject to the foregoing, you acknowledge and agree that our fee and expenses will be paid by Secured Creditor as a 11 U.S.C. § 506 surcharge, if and to the extent that Secured Creditor agrees, and the court approves.  You further acknowledge and agree that, if the Property is sold to a third party, we may receive some or all of our fee and expenses under a fee agreement with the local listing broker.

5.      You will make commercially reasonable efforts to assist us in procuring Secured Creditor's Consent and marketing and selling the Property and hereby appoint us as your agent to act on your behalf as trustee in connection with the same.

6.      We acknowledge and agree that (a) you are not executing this Agreement in your individual capacity, but solely as trustee of the estate, (b) we do not and will not have any right or claim with respect to the estate and (c) our sole recourse for payment of our fee and expenses will be to Secured Creditor under the Consent and the local listing broker under our fee agreement, but only if and to the extent that the same are approved by the court.

7.      This Agreement constitutes our complete agreement on this matter and supersedes all prior agreements and representations concerning the same.  It may not be modified or amended except in a writing signed by both parties.

Please let us know if you have any questions regarding the foregoing or enclosed materials. Otherwise, kindly confirm your agreement by signing and returning this letter to retain us at your earliest convenience.

We look forward to working with you.

Sincerely,

**BK GLOBAL:**

**BK GLOBAL REAL ESTATE SERVICES**, a Florida limited liability company

By:_____

Patrick Butler, Broker-in-Charge

Acknowledged and agreed as of the date set forth above.

**TRUSTEE:**

_____

**MARTIN SEIFERT**, not individually but solely as Trustee in the referenced matter.

2

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

IN THE MATTER OF: )
                                     )             CASE NO. 18-10519
BETTY JO SCHAEFER )             Chapter 7
                                       )
          Debtor           )

### DECLARATION OF REALTOR

I, Duane E. Wilder, declare:

1.      I am a Realtor with Coldwell Banker Roth Wehrly Graber ("Roth Wehrly Graber").

2.      I am an employee of Roth Wehrly Graber, the realty firm that the Trustee is seeking to employ generally by the Application to which this Declaration is attached.

3.      Roth Wehrly Graber has extensive experience in the sale of real property.  This firm is well qualified to assist the Trustee in selling the real property belonging to the Debtor, and is willing to accept employment on the basis set forth in the Application and the attached Listing Contract.

4.      Roth Wehrly Graber does not hold any interest adverse to the above-captioned estate and Roth Wehrly Graber is a disinterested party as defined in 11 U.S.C. §101(14).  Further, neither the undersigned nor any member of Roth Wehrly Graber has been employed by the Debtor or any scheduled creditor of the Debtor.

5.      Neither I, nor any members of Roth Wehrly Graber have any connection with the United States Trustee's Office or its employees.

6.      I hold an realtor's bond in favor of the United States pursuant to applicable bankruptcy rules.

**Exhibit B**

7.      I am both a licensed realtor and auctioneer under Indiana law.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 10th day of October, 2018, at Fort Wayne, Indiana.

**Roth Wehrly Graber**

BY: *Duane E. Wilder*
　　　Duane E. Wilder



# Listing Contract
# (EXCLUSIVE RIGHT TO SELL)

1  Date: _____
2
3  In consideration of services to be performed by _____ **Duane E. Wilder** _____
4  (Broker/Company, hereinafter referred to as "Broker") for _____ **Coldwell Banker Roth Wehrly Graber** _____
5  _____ ("Seller")
6  Seller appoints Broker as Seller's broker with irrevocable and exclusive right to sell, exchange, option, or lease the real property known
7  as _____ **15333 Town Gardens ct** _____ in _____ **Perry** _____ Township,
8  _____ **Allen** _____ County, at _____ **Huntertown** _____, Indiana _____ **46748** _____
9  (zip code) legally described as: **towne square seclll lot 94**
10  _____ (the "Property")
11
12  This contract begins on _____, and expires at 11:59 P.M. _____
13  subject to the following terms and conditions:
14
15  List Price: $ _____    Possession: _____
16  **Seller represents that Seller ☐ is ☐ is not delinquent on any loans which could constitute a lien on the Property and the total**
17  **loans affecting the Property do not exceed the list price and costs of sale. Seller is not a party to any bankruptcy proceeding.**
18  Also, Seller has the capacity to convey the Property by a general Warranty Deed or by _____. Did the Seller
19  acquire ownership of the property at a tax sale, Sherriff's sale, any judicial sale, or mortgage foreclosure proceeding? ☐ **Yes** ☐ **No**.
20  Seller ☐ is ☒ is not a "foreign person" (individual or entity). Seller ☐ is ☒ is not subject to the Foreign Investment in Real Property Tax
21  Act. See http://www.irs.gov/publications/p515/index.html.
22
23  Terms of Sale: The Property may be sold for cash or any of the following methods indicated below:
24  ☒ Conventional Mortgage              ☐ Conditional Sales Contract
25  ☐ Insured Conventional Mortgage      ☐ FHA
26  ☐ Assumption of Existing Mortgage Balance   ☐ VA
27  ☒ Other
28  **cash**
29  Seller agrees to pay costs associated with financing not to exceed _____.
30  Property Offered for Sale: The above list price includes the Property and all improvements and fixtures permanently installed and affixed
31  thereto, **except** _____ Items of Personal Property
32  included in the sale: _____
33  _____
34  _____
35
36  **A.  EXCLUSIVE LISTING.** The parties understand and agree that this is an exclusive right to sell, option, exchange or lease listing, and
37       Broker shall be entitled to the commission hereinafter established which shall be payable upon the occurrence of any of the
38       following events:
39
40       1.   at the time the Property is sold, optioned, exchanged or leased by any person, including the Seller, to any person
41            during the term of this contract or any renewal or extension thereof,
42       2.   at the time Seller, Broker, or any other real estate licensee secures a buyer or lessee ready, willing and able to
43            purchase, option, exchange or lease the Property for such price and terms as specified, or such other price or terms
44            as Seller may accept,
45       3.   at the time an agreement is entered into sell, exchange, option or lease during the term of this contract or any
46            renewal or extension thereof, and ultimately completed after the termination of this contract,
47       4.   the Property is sold, optioned, leased, or exchanged by Seller or any person within _____ days after
48            termination of this Listing Contract to any person procured in whole or in part by the efforts of Broker, any cooperating
49            broker, or Seller, provided, however, this extension clause shall not apply if this Exclusive Listing Contract terminates and
50            the Property is listed exclusively with another licensed broker, or
51       5.   at the time of default by Seller to any valid, fully executed, written agreement to sell, option, exchange, or lease the Property.
52
53  Any commission required to be paid under items 1., 3. and 4. above shall be due and payable at the closing of the transaction when title
54  to or any interest in the Property is transferred to a buyer or lessee. Any commission required to be paid under items 2. and 5. above
55  shall be due and payable upon demand by Broker. In the event that commission is not paid when due, then Broker shall be entitled to
56  interest rate of _____ **6.000** _____ % per annum until commission is paid.
57
58  If the Seller and a Buyer sign a Purchase Agreement, Option to Purchase Real Estate, Lease or the closing of the sale of the Property will not
59  take place until after the term of this contract, then this contract shall automatically be extended to coincide with the closing date or term of the
60  lease.
61
62  **B.  BROKER'S COMMISSION.** The broker's commission charged by the listing Broker for services rendered, with respect to any listing is
63       solely a matter of negotiation between Broker and Seller and is not fixed, controlled, suggested recommended or maintained by the
64       Indiana Association of REALTORS®, Inc., the local Board/Association of REALTORS®, the listing service (if applicable) or any person
65       not a party to the contract.

CB Roth Wehrly Graber REALTORS 9109 Stellhorn Crossing pkwy Fort Wayne, IN 46815          Phone: 260.489.2485          Fax: 260.486.9421          7936 wethersfield
Duane Wilder                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Seller shall pay in cash to Broker for services a total commission as follows:

    1.   __6.000__ % of the selling/exchange price or option selling price, but not less than $ _____
                                                                                              .
    2.   In the event of a purchase option, the Seller agrees to compensate Broker _____ % of the consideration paid for an Option to Purchase.
    3.   In the event of a lease, the Seller agrees to compensate Broker _____ % of all amounts to be paid by a lessee to Seller over the term of the lease.
    4.   Other: _____
                   _____

**SELLER HAS BEEN ADVISED OF BROKER'S COOPERATIVE COMPENSATION POLICY, including the amount of compensation that will be offered to cooperating brokers which is __2.000__ % of the selling price but not less than $ _____, included in total commission listed above.**

**C.  COMMISSION; ATTORNEY FEES.** For purposes of this contract, the parties understand and agree that Broker's commission is deemed to be a share of the purchase money received by Seller. If any action is filed in relation to this Listing Contract, the unsuccessful party shall pay to the successful party a reasonable sum for the successful party's attorney's fees and court costs.

**D.  EARNEST MONEY.** Broker is authorized to accept earnest money or any part of the purchase price and hold it in an escrow/trust account. In the event that Seller is to receive any portion of the earnest money, Seller authorizes Broker to keep any earnest money deposits up to the amount the commission would have been if the sale was completed in payment for Broker's expenses, services and advertising.

**E.  LISTING SERVICE INFORMATION (IF APPLICABLE).** It is understood that the Broker may rely on the validity of the data pertaining to this Listing Contract which has been provided by the Seller, and the Seller agrees that Broker may disclose the data to a listing service, Internet or any advertising media and that the Broker may furnish notice to a listing service or other provider of all changes of information concerning the Property. Seller has been advised of the benefits of marketing a property through a listing service. Excluding a property from a listing service may result in a lower number of offers received and lower sales price.

**F.  INFORMATION REGARDING PROPERTY. Seller acknowledges that the information on the Seller's Residential Real Estate** Sales Disclosure Form (if applicable) and the information provided for the listing is true and correct, and that Seller is the owner of the Property or is the authorized agent(s) of the true owner with complete and full authority to act on behalf of the owner(s). Seller further warrants that no other listing contract is now in force with any other broker. The Seller(s) or authorized agent(s) agree to indemnify, actively defend and hold Broker, Company and its agents harmless from any damages, loss, liability and expenses including attorney fees and costs, arising from incorrect information or failure to supply material information regarding the Property, including, but not limited to the condition of appliances, heating, plumbing, electrical, sewage, major defects in structure, mold and/or other environmental conditions or hazards, location of property lines, public and private restrictions on the use of the Property, any loss or liability in conjunction with this agreement or with Broker or other licensees showing the Property including, but not limited to, injuries suffered by other licensees or prospective buyers.

**G.  ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE.** Seller acknowledges that Listing Broker, Selling Broker and all licensees associated with Brokers are NOT experts and have NO special training, knowledge or experience with regard to the evaluation or existence of possible lead-based paint, radon, mold and other biological contaminants ("Environmental Contaminants") which might exist and affect the Property. Environmental Contaminants at harmful levels may cause property damage and serious illness, including but not limited to, allergic and/or respiratory problems, particularly in persons with immune system problems, young children and/or the elderly.

**Seller agrees to consult with appropriate experts and accepts all risks for Environmental Contaminants and releases and holds harmless all Brokers, their companies and licensees from any and all liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result, repair, disclosed defect or deficiency affecting the Property, including Environmental Contaminants. This release shall survive the closing.**

**H.  AGENCY DISCLOSURES.**

    1.  **Office Policy.** Seller acknowledges receipt of a copy of the written office policy relating to agency.

    2.  **Agency Relationship.** I.C. 25-34. 1-10-9.5 provides that a Licensee has an agency relationship with, and is representing, the individual with whom the Licensee is working unless (1) there is a written agreement to the contrary; or (2) the Licensee is merely assisting the individual as a customer without compensation. Licensee(Broker) represents the interests of the Seller as Seller's agent to sell the Property. Licensee owes duties of trust, loyalty, confidentiality, accounting and disclosure to the Seller. However, Licensee must deal honestly with a buyer and disclose to the buyer information about the Property. All representations made by Licensee about the Property are made as the agent of the Seller. Seller is advised that the Property may be sold with the assistance of other Licensees working as buyer agents and that Licensee's company policy is to cooperate with and compensate

15333 Town Gardens ct, Huntertown,  46748
(Property Address)
**Page 2 of 5 (Listing Contract)**
Copyright IAR 2018

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      7936 wethersfield

129  buyer agents. Buyer agents are Licensees who show the Property to prospective buyers, but who represent only the interests
130  of the buyer. Buyer agents owe duties of trust, loyalty, confidentiality, accounting and disclosure to buyers. All representations
131  made by buyer agents about the Property are not made as the agent of the Seller.
132

133 *PSW*  3.  ~~Limited Agency Authorization.~~ ~~Licensee or the managing broker may represent Buyer as a buyer agent if such a Buyer wishes~~
134  ~~to see the Property, Licensee has agency duties to both Seller and Buyer, and those duties may be different or even adverse.~~
135  ~~Seller knowingly consents to Licensee acting as a limited agent for such showings.~~
136

137  If limited agency arises, Licensee **shall not disclose** the following without the informed consent, in writing, of both Seller and Buyer:
138 *PSW*  a.  ~~Any material or confidential information, except adverse material facts or risks actually known by Licensee concerning the~~
139  ~~physical condition of the Property and facts required by statute, rule, or regulation to be disclosed and that could not be~~
140  ~~discovered by a reasonable and timely inspection of the Property by the parties.~~
141  b.  ~~That a Buyer will pay more than the offered purchase price for the Property.~~
142  c.  ~~That Seller will accept less than the listed price for the Property.~~
143  d.  ~~Other terms that would create a contractual advantage for one party over another party.~~
144  e.  ~~What motivates a party to buy or sell the Property.~~

*PSW* 145 ~~In a limited agency situation, the parties agree that there will be no imputation of knowledge or information between any party and the limited~~
147  ~~agent or among Licensees.~~
148

*PSW* 149 ~~Seller acknowledges that Limited Agency Authorization has been read and understood. Seller understands that Seller does not have to~~
150  ~~consent to Licensee(s) acting as limited agent(s), but gives informed consent voluntarily to limited agency and waives any claims, damages,~~
151  ~~losses, expenses, including attorneys' fees and costs, against Licensee(s) arising from Licensee's(s') role of limited agent(s).~~
152

153  I.  **SELLER AUTHORIZATION AND COOPERATION.** Seller agrees to provide Broker with the required information necessary for entry
154  into a listing service, Internet or other advertising media, to include electronic media and the use of any exterior/interior photos, if
155  applicable. Seller will cooperate with Broker by permitting the Property to be shown at reasonable times and authorizes Broker to place
156  and remove "For Sale" and other signs on the Property.
157

158  1.  Seller authorizes Broker and cooperating brokers, buyer brokers, Broker's personal assistants, contractors, inspectors,
159  appraisers and others reasonably necessary to market the Property to enter the Property. Seller acknowledges that a buyer
160  may enter the Property with contractors, inspectors or appraisers without being accompanied by Broker. Buyer or Buyer's
161  broker may take videos, photos and electronic images of the Property.
162  2.  Seller will provide Broker with key(s) necessary to access the Property.
163  3.  Seller authorizes Broker to have duplicate keys made.
164  4.  Seller agrees not to rent or lease the Property during the term of this Listing Contract without written notification to Broker.
165  5.  Seller agrees that Broker may work with buyer brokers to assist in performing Broker's duties according to the terms of this
166  Listing Contract.
167  6.  Seller grants to Broker an exclusive, non-revocable, copyright license to disseminate, publish, modify and reproduce all of the
168  content of this Listing Contract, including but not limited to, price and terms of financing on a closed sale, photographs,
169  drawings, written descriptions, narratives, and motion pictures obtained or produced by Broker and Broker's agents pursuant
170  to this Listing Contract to members of the Indiana Association of REALTORS®, Inc., to other brokers upon request and to a
171  listing service, Internet or any advertising media. Seller agrees that Broker shall own all rights, title and interest, including but
172  not limited to, any copyright in Property images taken by Broker's photographers or agents.
173  7.  Seller authorizes its utility companies to divulge all utility information to Broker and to provide copies of utility statements, if
174  requested. Seller's utility companies are as follows: _____
175  _____
176  8.  Seller authorizes its Homeowner's Association (HOA) to divulge all HOA information to Broker and to provide copies of all HOA
177  documents if requested. HOA Management Company: _____. HOA Contact
178  Information: _____. Seller acknowledges
179  there are homeowner's association fees and/or assessments in the amount of $_____ per _____,
180  which have been paid by Seller through _____, _____.
181  9.  Seller authorizes its lending institution to divulge all mortgage information to Broker and to provide copies of the note and
182  mortgage, if requested. Seller's lending institution is _____
183  _____and the mortgage loan number is _____. If
184  Seller's mortgage is subject to a pre-payment penalty, Seller agrees to give timely written notice to Seller's lender that the
185  mortgage is to be pre-paid from the sale proceeds of the Property. It is acknowledged that Seller's failure to give this notice
186  may result in a pre-payment penalty to be paid by Seller.
187  10.  Seller [X] does [ ] does not authorize Broker to disclose the existence of written offers to Buyer. If Seller has authorized
188  disclosure of the existence of offers on the Property, Broker shall also disclose, if asked, whether offers were obtained by the
189  listing licensee, another licensee in the listing firm or by a cooperating broker. (NOTE: Disclosure of individual and company
190  names is not necessary.)
191  11.  Seller [ ] is [X] is not offering a limited home warranty.

**15333 Town Gardens ct, Huntertown,  46748**
(Property Address)
**Page 3 of 5 (Listing Contract)**
COPYRIGHT IAR 2018

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          7936 wethersfield

J. **LOCKBOX/KEY AUTHORIZATION/USE.** To facilitate access to the Property, a lockbox installation ☐ **is** ☐ **is not** authorized, subject following acknowledgements/conditions:

    1.   Seller will safeguard valuables. Seller accepts responsibility for preparing the Property to minimize the likelihood of injury, damage and/or loss of personal property.

    2.   Seller acknowledges Broker is not an insurer of Seller's real estate and personal property and waives claims against Broker and Broker's authorized persons for loss and/or damage. Seller further agrees to indemnify and hold harmless Broker and all authorized persons from claims by third parties from all loss and/or damage.

    3.   Seller instructs Broker to make reasonable efforts to notify Seller of showing requests. If Seller cannot be contacted to schedule a showing, Seller ☒ **authorizes** ☐ **does not authorize** Broker to access the Property,

    4.   Where a tenant/lessee occupies the Property, it is Seller's sole responsibility to obtain tenant/lessee consent to allow the use of a lockbox/key and consent for Broker to access the property.

K. **FAIR HOUSING.** The parties acknowledge that the Fair Housing Act prohibits discrimination in housing because of race, color, national origin, religion, sex, familial status, and handicap.

The National Association of REALTORS® Code of Ethics also prohibits REALTORS® from discriminating on the basis of sexual orientation or gender identity.

L. **ADDITIONAL PROVISIONS.**

    1.   Seller understands the terms of this Listing Contract and has received a copy.

    2.   The parties to this contract agree that it contains the entire agreement of the parties and cannot be changed except by their written consent.

    3.   The parties to this contract agree that it is binding upon the parties' heirs, administrators, executors, successors and assigns.

    4.   The parties to this contract agree that this Agreement/contract together with any and all subsequent forms, amendments and addenda may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The parties agree that this Agreement/contract together with any and all subsequent forms, amendments and addenda may be transmitted between them electronically or digitally. The parties intend that electronically or digitally transmitted signatures constitute original signatures and are binding on the parties. The original documents shall be promptly delivered, if requested.

    5.   Broker may refer Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker does not guarantee the performance of any service provider. Seller is free to select providers other than those referred or recommended to Seller by Broker.

    6.   Broker is not and shall not be charged with the responsibility for the custody, management, care, maintenance, protection or repair of the Property nor for the protection or custody of any personal property located thereon, unless provided for in another written agreement.

    7.   Seller consents to receive communications from Broker via telephone, U.S. mail, email, text message and facsimile at the numbers/addresses provided to Broker unless Seller notifies Broker in writing to the contrary.

    8.   Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.

    9.   Seller discloses to Listing Broker that Seller is licensed and holds License # _____ .

M. **WIRE FRAUD. If you receive any electronic communication directing you to transfer funds or provide nonpublic personal information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM BROKER OR TITLE COMPANY, do not respond until you verify the authenticity by direct communication with Broker or Title Company. Do not rely on telephone numbers provided in the electronic communication. Such requests may be part of a scheme to steal funds or use your identity to commit a crime.**

N. **FURTHER CONDITIONS.**
**This Listing Agreement and any sale of the property is subject to and conditioned upon approval by the United States Bankruptcy Court.**

_____

_____

_____

_____

248 *Duane E. Wilder*          rb14015239

249 AGENT                          IN LICENSE #          SELLER'S SIGNATURE                          DATE
250

251 **Duane E. Wilder**

252 BROKER OR COMPANY NAME          IN LICENSE #          PRINTED
253

254

255 ACCEPTED BY: MANAGING BROKER          DATE          SELLER'S SIGNATURE                          DATE
256

257

258                                                       PRINTED



Prepared and provided as member service by the Indiana Association of REALTORS®, Inc. (IAR) This form is
restricted to use by members of IAR, This is a legally binding contract, if not understood seek legal advice.
**Form #01. Copyright IAR 2018**



**15333 Town Gardens ct, Huntertown,  46748**
(Property Address)
**Page 5 of 5 (Listing Contract)**

```
Label Matrix for local noticing        Above & Beyond Community Management        Allen County Treasurer
0755-1                                  507 Airport North Office Park              1 East Main Street Suite 104
Case 18-10519-reg                       Fort Wayne, IN 46825-6705                 Fort Wayne IN  46802-1888
Northern District of Indiana
Fort Wayne Division
Fri Oct 26 14:53:10 EDT 2018

Allen County Treasurer                  Amsher Collection Service                  BLACK CREEK - GRAY GILL INC
P.O. Box 2540                           REP: T Mobile                              1410 S CLINTON ST
Fort Wayne, IN 46801-2540               4524 Southlake Parkway, Suite 15           Chicago, IL 60607-5102
                                        Birmingham, AL 35244-3271


CAPITAL ONE BANK                        CCC                                        CHASE
PO BOX 1492                             6100 N. KEYSTONE AVE. STE 647              PO BOX 469030
Carol Stream, IL 60197                  Indianapolis, IN 46220-2430               Denver, CO 80246-9030


DOYLE & FOUTTY                          DUPONT HOSPITAL                            FORT WAYNE RADIOLOGY
41 E. WASHINGTON STREET, STE 400        2520 E DUPONT RD                           LOCKBOX A20
Indianapolis, IN 46204-3517             Fort Wayne, IN 46825-1675                  PO BOX 2601
                                                                                   Fort Wayne, IN 46801-2601


GRABILL ESTATES                         Nancy J. Gargula                           Steven J. Glaser
13910 MAIN ST                           100 East Wayne Street, 5th Floor           132 E. Berry St
Grabill, IN 46741-2039                  South Bend, IN 46601-2349                  Fort Wayne, IN 46802-2401


INDIANA SURGICAL SPECIALISTS            Indiana Department of Revenue              JUSTIN BRAUN
1818 CAREW ST                           Bankruptcy Section - MS 108                435 HUFFMAN ST
Fort Wayne, IN 46805-4788               100 North Senate Avenue, N240              Fort Wayne, IN 46808-3222
                                        Indianapolis IN 46204-2231


PARKVIEW PHYSICIANS CARDIOLOGY          (p)PROFESSIONAL EMERGENCY PHYSICIANS INC   R. Scott Perry
PO BOX 2253                             3640 NEW VISION DR                         REP: Above & Beyond Community Mgt.
Fort Wayne, IN 46801-2253               SUITE A                                    5532 St. Joe Rd.
                                        FORT WAYNE IN 46845-1717                   Fort Wayne, IN 46835-3328


SALLIE MAE                              (p)SPRINGLEAF FINANCIAL SERVICES           Betty Jo Schaefer
PO BOX 4700                             P O BOX 3251                               15333 Towne Gardens Ct
Wilkes Barre, PA 18773                  EVANSVILLE IN 47731-3251                   Huntertown, IN 46748-9155


(p)T MOBILE                             (p)TD BANKNORTH NA                         WELTMAN WEINBERG & REIS
C O AMERICAN INFOSOURCE LP              70 GRAY ROAD                               525 VINE ST STE 800
4515 N SANTA FE AVE                     FALMOUTH ME 04105-2299                     Cincinnati, OH 45202-3171
OKLAHOMA CITY OK 73118-7901



                    The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
                    by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).
```

PROFESSIONAL EMERGENCY PHYSICIANS
PO BOX 12949
Fort Wayne, IN 46866

SPRINGLEAF FINANCIAL
LEO CROSSING
10376 LEO RD, STE E
Fort Wayne, IN 46825

T Mobile
P.O. Box 790047
Saint Louis, MO 63179-0047


TD BANK NORTH NA
OPERATIONS S CENTER
PO BOX 8400
Lewiston, ME 04243

End of Label Matrix
Mailable recipients    26
Bypassed recipients     0
Total                  26