## UNITED STATE BANKRUPTCY COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

IN RE:                                )
                                      )                    CASE NO. 18-10519
BETTY JO SCHAEFER                     )
                                      )
            DEBTOR(S).                )

### MOTION FOR AUTHORITY TO SELL REAL ESTATE BY PRIVATE SALE, FREE AND CLEAR OF LIENS, AND TO MAKE PAYMENT OF SECURED AND ADMINISTRATIVE CLAIMS AND CLOSING COSTS

Martin E. Seifert, Trustee ("Trustee"), pursuant to 11 U.S.C. § 363, files this motion to approve sale of real estate, free and clear of all liens, encumbrances, and interests ("Motion"). As his Motion, the Trustee states as follows:

### JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and District Court Local Rule 200.1.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The basis for the relief requested is 11 U.S.C. §§ 363(b), (f) and (m), and Federal Rules of Bankruptcy Procedure 2002 and 6004.

### BACKGROUND

4.      On March 30, 2018, the Debtor filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code (the "Petition Date").

5.      On March 30, 2018, Martin E. Seifert was immediately appointed as Trustee.

//Motion to Sell Real Estate (BK Global)-1                    1

6.      Among the assets of the estate is a parcel of real estate commonly known as 15333 Towne Gardens Ct., Huntertown, Indiana 46748 ("Real Estate").

7.      The Debtor scheduled the Property as having a value of $130,000.00 subject to a mortgage in favor of Chase (the "Secured Creditor") in the amount owed on the Petition Date of approximately $140,000.00.

8.      The Trustee has received and accepted an offer to purchase the Real Estate for $133,600.00 subject to the approval of the Court.  A true and accurate copy of the Purchase Agreement and Addendums are attached as **Exhibit A**.

9.      The Secured Creditor has represented and warranted that it possesses a valid, perfected, enforceable and unavoidable mortgage lien on the Real Estate by virtue of a promissory note and a mortgage recorded in the Office of the Recorder of Allen County, Indiana (the "Secured Creditor Indebtedness").

## RELIEF REQUESTED

10.      The Trustee has determined that, pursuant to 11 U.S.C. §§ 704(1) and 363(b)(1), (f) and (m), it is in the best interests of the estate to sell the Real Estate by private sale free and clear of liens.  As a material inducement to the Trustee's decision to pursue the proposed sale, the Secured Creditor consents to the sale of the Real Estate and the payment of a carve-out fund (the "Carve-Out Fund") will provide a means to pay for the costs of this case and provide a source of funds for recovery by other creditors.

<u>BASIS FOR RELIEF</u>

**A.    <u>The Sale of the Real Estate Should be Approved</u>**

11.    The Trustee seeks the Court's authority to sell the Real Estate free and clear of all liens, claims, encumbrances, and interests, but otherwise "As-Is, Where-Is" and without representations or warranties of any type, express or implied, being given by the Trustee and his professionals, pursuant to the sale procedures described below.

12.    The Trustee has entered into a Purchase Agreement for the Real Estate in the amount of $133,600.00, which has been approved by the Secured Creditor and will result in a carve-out for the bankruptcy estate in the amount of $7,500.00.

13.    Accordingly, the Trustee submits that the sale of the Real Estate pursuant to the above process is reasonable under 11 U.S.C. § 363(b).

**B.    <u>The Sale of the Real Estate Should be Approved Free and Clear of All Interests</u>**

14.    The Trustee also seeks authority to pay the real estate brokers per the Court's prior order on the Application to Employ and to pay the customary costs of closing.

15.    Attached as <u>**Exhibit B**</u> is a proposed settlement statement showing the anticipated payments.

16.    The Trustee respectfully requests that this Court: (a) waive the 14 day stay pursuant to Rule 6004(h), deem the sale order enforceable immediately upon entry, and authorize the Trustee to close on the sale immediately upon entry of the Final Sale Order; and (b) authorize the Trustee to take all actions and execute all documents he deems reasonable, necessary and/or desirable to effectuate the requested relief.

<u>**C**ONCLUSION</u>

    **WHEREFORE**, the Trustee respectfully requests that the Court enter an Order approving the sale of the Real Estate pursuant to 11 U.S.C. § 363, and for such other and further relief as this Court deems proper in the premises.

    **Dated:  May 15, 2019**

                                    **Respectfully submitted,**

                                    **CHAPTER 7 TRUSTEE**
                                    **444 EAST MAIN STREET**
                                    **FORT WAYNE, INDIANA 46802**
                                    **TELEPHONE: (260) 426-0444**
                                    **FAX: (260) 422-0274**
                                    **EMAIL: mseifert@hallercolvin.com**

                                    **BY: /s/ Martin E. Seifert**
                                      **MARTIN E. SEIFERT**
                                    **I.D. #16857-02**

**<u>CERTIFICATE OF SERVICE</u>**

    The undersigned hereby certifies that a true and exact copy of the above and foregoing Motion for Authority to Sell Real Estate by Private Sale, Free and Clear of Liens, and to Make Payment of Secured and Administrative Claims and Closing Costs has been sent electronically by the Court's electronic filing service or by first class United States mail, postage prepaid, this 15th day of May, 2019, to:

Steven J. Glaser, Esq.          United States Trustee
Glaser & Ebbs                 555 One Michiana Square
132 E. Berry Street            100 East Wayne Street
Fort Wayne, IN 46802        South Bend, Indiana 46601

                                    /s/ Martin E. Seifert
                                  **MARTIN E. SEIFERT**

Listing Broker (Co.) **Coldwell Banker The Real Estate Group**    (**UPRWGR06**   ) By Duane Wilder                              (**UP388045800** )
Office code                                                                                                    individual code

Selling Broker (Co.) **PUMPKIN VINE REALTY, INC**    (**NE1698**   ) By **DINAH WARD LYNCH**                         (**NE1699**        )
Office code                                                                                                    individual code

# PURCHASE AGREEMENT
## (IMPROVED PROPERTY)

1  Date: **December 21, 2018**
2
3  A.  **BUYER:** _____ **JORDAN  ALDRICH** _____ ("Buyer")
4      agrees to buy  the following property from the owner ("Seller") for the consideration and subject to the following terms,
5      provisions, and conditions:
6
7  B.  **PROPERTY:** The property ("Property") is known as _____ **15333 Towne Gardens ct** _____
8      in _____ **Perry** _____ Township, _____ **Allen County** _____ County, _____ **Huntertown** _____
9      Indiana, _____ **46748** _____ (zip code) legally described as: **TOWNE SQUARE SEC III LOT 94** _____
10
11      together with any existing permanent improvements and fixtures attached (**unless leased or excluded**), including, but
12      not limited to, electrical and/or gas fixtures, heating and central air-conditioning equipment and all attachments thereto,
13      built-in kitchen equipment, sump pumps, water softener, water purifier, gas grills, fireplace inserts, gas logs and grates,
14      central vacuum equipment, window shades/blinds, curtain rods, drapery poles and fixtures, ceiling fans and light
15      fixtures, towel racks and bars, storm doors, windows, awnings, TV antennas, wall mounts, satellite dishes, storage
16      barns, all landscaping, mailbox, garage door opener(s) with control(s) AND THE FOLLOWING: **RANGE,**
17      **DISHWASHER, CENTRAL AIR, WATER HEATER, GFA FURNACE**
18
19      EXCLUDES THE FOLLOWING: **PERSONAL PROPERTY OF SELLER**
20
21      **HOME HEATING FUEL:** Any remaining fuel stored in tank(s) ☐ to be included in the sale  ☐ will be purchased by
22      Buyer at current market price measured within five (5) days prior to closing ☒ not applicable.
23      **The terms of this Agreement will determine what items are included/excluded, not the Seller's Disclosure Form,**
24      **multiple listing service or other promotional materials. All items sold shall be fully paid for by Seller at time of**
25      **closing the transaction. Buyer should verify total square footage, land, room dimensions or community amenities**
26      **if material.**
27
28  C.  **PRICE:** Buyer will pay the total purchase price of ($ **130,000.00** _____ ) **One Hundred Thirty Thousand**
29      _____ Dollars for the Property. If Buyer obtains an appraisal of the Property, this
30      Agreement is contingent upon the Property appraising at no less than the agreed upon purchase price. If appraised
31      value is less than the agreed upon purchase price, either party may terminate this Agreement or parties may mutually
32      agree to amend the price.
33
34  D.  **EARNEST MONEY:**
35      1.  **Submission:** Buyer submits $ **1,300.00** _____ as earnest money which shall be applied to the
36          purchase price at closing. **If not submitted with Purchase Agreement, Earnest money shall be delivered to Escrow**
37          **Agent within** _____ **2** _____ ☐ **hours** ☒ **days of acceptance of offer to purchase.**  Unless indicated
38          otherwise in this Agreement, the listing broker shall act as Escrow Agent and shall, after acceptance of the Agreement
39          and **within two (2) banking days of receipt of the earnest money,** deposit the earnest money into its escrow
40          account and hold it until time of closing the transaction or termination of this Agreement. Earnest money shall be
41          returned promptly to Buyer in the event this offer is not accepted. If Buyer fails for any reason to timely submit Earnest
42          Money in the contracted amount, Seller may terminate this Agreement upon notice to Buyer prior to Escrow Agent's
43          receipt of the Earnest Money.
44      2.  **Disbursement:** Upon notification that Buyer or Seller intends not to perform, and if Escrow Agent is the Broker,
45          then Broker holding the Earnest Money may release the Earnest Money as provided in this Agreement. If no
46          provision is made in this Agreement, Broker may send to Buyer and Seller notice of the disbursement by certified
47          mail of the intended payee of the Earnest Money as permitted in 876 IAC 8-2-2.  If neither Buyer nor Seller enters
48          into a mutual release or initiates litigation within sixty (60) days of the mailing date of the certified letter, Broker may
49          release the Earnest Money to the party identified in the certified letter.  If the Escrow Agent is the Broker, Broker
50          shall be absolved from any responsibility to make payment to Seller or Buyer unless the parties enter into a Mutual
51          Release or a Court issues an Order for payment, except as permitted in 876 IAC 8-2-2 (release of earnest money).
52          Buyer and Seller agree to hold the Broker harmless from any liability, including attorney's fees and costs, for good
53          faith disbursement of Earnest Money in accordance with this Agreement and licensing regulations

**15333 Towne Gardens ct, Huntertown, IN  46748**
(Property Address)
Page 1 of 8    (Purchase Agreement)
Copyright IAR 2018

*JA*

**Exhibit A**

54  **3. Legal Remedies/Default:** If this offer is accepted and Buyer fails or refuses to close the transaction, without
55  legal cause, the earnest money shall be retained by Seller for damages Seller has or will incur. Seller retains all
56  rights to seek other legal and equitable remedies, which may include specific performance and additional monetary
57  damages. All parties have the legal duty to use good faith and due diligence in completing the terms and
58  conditions of this Agreement. A material failure to perform any obligation under this Agreement is a default which
59  may subject the defaulting party to liability for damages and/or other legal remedies, which, as stated above, may
60  include specific performance and monetary damages in addition to loss of Earnest Money.

*(handwritten initials: JA on line 57)*

61  E.  **METHOD OF PAYMENT:  (Check appropriate paragraph number)**
62     1.  ☐  **CASH:** The entire purchase price shall be paid in cash and no financing is required. Buyer to provide proof
63        of funds submitted ☐ with offer ☐ within _____ days of acceptance.
64     2.  ☒  **NEW MORTGAGE:** Completion of this transaction shall be contingent upon the Buyer's ability to obtain a
65
66        ☐ Conventional ☒ Insured Conventional ☐FHA ☐VA ☐Other: _____ first
67        mortgage loan for ___95.000___ % of purchase price, payable in not less than _____ years, with an
68        original rate of interest not to exceed _____ % per annum and not to exceed _____ points. Buyer
69        shall pay all costs of obtaining financing, except _____
70        _____.
71        Any inspections and charges which are required to be made and charged to Buyer or Seller by the lender,
72        FHA, VA, or mortgage insurer, shall be made and charged in accordance with their prevailing rules or
73        regulations and shall supersede any provisions of this Agreement.
74
75     3.  ☐  **ASSUMPTION: ( Attach Financing Addendum)**
76     4.  ☐  **CONDITIONAL SALES CONTRACT: (Attach Financing Addendum)**
77     5.  ☐  **OTHER METHOD OF PAYMENT: (Attach Financing Addendum)**
78
79  F.  **TIME FOR OBTAINING FINANCING:**
80     1.  **Application:** Within ___5___ days after the acceptance of this Agreement, Buyer agrees to make written
81        application for any financing necessary, to complete this transaction or for approval to assume the unpaid balance
82        of the existing mortgage and to make a diligent effort to meet the lender's requirements and to obtain financing in
83        cooperation with the Broker and Seller. **Buyer Authorizes lender to order appraisal immediately.**
84     2.  **Approval:** No more than ___120___ days after acceptance of this Agreement shall be allowed for obtaining loan
85        approval or mortgage assumption approval. If an approval is not obtained within the time specified above, this
86        Agreement may terminate unless an extension of time for this purpose is mutually agreed to in writing.
87
88  G.  **CLOSING:**
89     1.  **DATE:** The closing of the sale (the "Closing Date") shall be on or before _____ May 3, 2019 _____, or
90        within ___5___ days after **LENDER CLEAR TO CLOSE** _____, whichever is later or this Agreement
91        shall terminate unless an extension of time is mutually agreed to in writing. Any closing date earlier than the latest
92        date above must be by mutual written agreement of the parties.
93     2.  **FEE:** The settlement or closing fee incurred in conducting the settlement charged by the closing agent or company
94        shall be paid by ☐ **Buyer (included in allowance, if provided)** ☐ Seller ☒ Shared equally.
95     3.  **CONTINGENCY:** This Agreement:
96        ☒ is not contingent upon the closing of another transaction;
97        ☐ is contingent upon the closing of the **pending** transaction on Buyer's property located at _____
98        _____ scheduled to close by _____.
99        ☐ is contingent upon the acceptance of a Purchase Agreement on Buyer's property:
100           ☐ Addendum to Purchase Agreement First Right Contingency.  See attached Addendum.
101           ☐ Addendum to Purchase Agreement Limited Purchase Contingency Right.  See attached Addendum.
102    4.  **GOOD FUNDS:** Notwithstanding terms to the contrary, the Parties agree that as a condition to Closing, all
103       funds delivered to the closing agent's escrow account be in such form that the closing agent shall be able to disburse in
104       compliance with I.C. 27-07-3.7 et. seq. Therefore, all funds from a single source of $10,000 or more shall be wired
105       unconditionally to the closing agent's escrow account and all funds under $10,000 from a single source shall be good
106       funds as so defined by statute. Buyer is advised that the cost incurred to wire funds on behalf of the buyer to the closing
107       agent's escrow account for the closing of this transaction shall become an expense to the buyer and the actual cost
108       incurred shall appear on the closing statement.
109    5.  **WIRE FRAUD. If you receive any electronic communication directing you to transfer funds or provide**
110       **nonpublic personal information, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM**
111       **BROKER OR TITLE COMPANY, do not respond until you verify the authenticity by direct communication with**
112       **Broker or Title Company. Do not rely on telephone numbers provided in the electronic communication. Such**
113       **requests may be part of a scheme to steal funds or use your identity.**

*(handwritten initials: JA on line 111)*

---

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    ALDRICH

114 H.  **POSSESSION:**
115       1.  The possession of the Property shall be delivered to Buyer ☒ **at closing** ☐ **within** _____ **days beginning**
116           **the day after closing by** _____ ☐ **a.m.** ☐ **p.m.** ☐ **noon or** ☐ **on or before** _____ **if**
117           **closed.** For each day Seller is entitled to possession after closing, Seller shall pay to Buyer at closing $
118           _____ per day. If Seller does not deliver possession by the date and time required in the first sentence of
119           this paragraph, Seller shall pay Buyer $ _____ per day as **liquidated damages** until possession is
120           delivered to Buyer; and Buyer shall have all other legal and equitable remedies available against the Seller.
121       2.  **Maintenance of Property:** Seller shall maintain the Property in its present condition until its **possession is**
122           delivered to Buyer, subject to repairs in response to any inspection. Buyer may inspect the Property prior to closing
123           to determine whether Seller has complied with this paragraph. Seller shall remove all debris and personal property not
124           included in the sale.
125       3.  **Casualty Loss:** Risk of loss by damage or destruction to the Property prior to the closing shall be borne
126           by Seller, including any deductible(s). In the event any damage or destruction is not fully repaired prior to closing,
127           Buyer, at Buyer's option, may either **(a) terminate this Agreement with prompt return of earnest money to**
128           **buyer or (b) elect to close the transaction,** in which event Seller's right to all real property insurance proceeds
129           resulting from such damage or destruction shall be assigned in writing by Seller to Buyer.
130       4.  **Utilities/Municipal Services:** Seller shall pay for all municipal services and public utility charges through the day of
131           **possession.**
132
133 I.   **SURVEY:** Buyer shall receive a **(Check one)** ☐ **SURVEYOR LOCATION REPORT,** which is a survey where corner
134       markers are not set; ☒ **BOUNDARY SURVEY,** which is a survey where corner markers of the Property are set prior to
135       closing; ☐ **WAIVED,** no survey unless required by lender; at **(Check one)** ☒ **Buyer's expense (Included in**
136 *JA*  **allowance, if provided)** ☐ **Seller's expense** ☐ **Shared equally.** The survey shall (1) be received prior to closing and
137       certified as of a current date, (2) be reasonably satisfactory to Buyer, (3) show the location of all improvements and
138       easements, and (4) show the flood zone designation of the Property. If Buyer waives the right to conduct a survey, the
139       Seller, the Listing and Selling Brokers, and all licensees associated with Brokers are released from any and all liability
140       relating to any issues that could have been discovered by a survey. This release shall survive the closing.
141
142 J.   **FLOOD AREA/OTHER:** If the property is located in a flood plain, Buyer may be required to carry flood insurance at
143       Buyer's expense. Revised flood maps and changes to Federal law may substantially increase future flood insurance
144       premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance
145       agents regarding the need for flood insurance and possible premium increases. Buyer ☒ may ☐ may not terminate this
146       Agreement if the Property requires flood insurance. Buyer ☒ may ☐ may not terminate this Agreement if the Property is
147       subject to building or use limitations by reason of the location, which materially interfere with Buyer's intended use of
148       the Property.
149
150 K.   **HOMEOWNER'S INSURANCE:** Completion of this transaction shall be contingent upon the Buyer's ability to
151       obtain a favorable written commitment for homeowner's insurance within _____**120**_____ days after acceptance
152       of this Agreement.
153
154 L.   **ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE:** Buyer and Seller acknowledge that Listing Broker,
155       Selling Broker and all licensees associated with Brokers are NOT experts and have NO special training, knowledge or
156       experience with regard to the evaluation or existence of possible lead-based paint, radon, mold and other biological
157       contaminants ("Environmental Contaminants") which might exist and affect the Property. Environmental Contaminants
158       at harmful levels may cause property damage and serious illness, including but not limited to, allergic and/or respiratory
159       problems, particularly in persons with immune system problems, young children and/or the elderly.
160
161       Buyer is STRONGLY ADVISED to obtain inspections (see below) to fully determine the condition of the Property and its
162       environmental status. The ONLY way to determine if Environmental Contaminants are present at the Property at
163 *JA*  harmful levels is through inspections.
164
165       **Buyer and Seller agree to consult with appropriate experts and accept all risks for Environmental**
166       **Contaminants and release and hold harmless all Brokers, their companies and licensees from any and all**
167       **liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result,**
168       **repair, disclosed defect or deficiency affecting the Property, including Environmental Contaminants. This**
169       **release shall survive the closing.**
170
171 M.   **INSPECTIONS: (Check appropriate paragraph number)**
172
173       Buyer has been made aware that independent inspections disclosing the condition of the property are available and has
174       been afforded the opportunity to require such inspections as a condition of this Agreement.

---

**15333 Towne Gardens ct, Huntertown, IN  46748**

(Property Address)

**Page 3 of 8    (Purchase Agreement)**                                      *JA*

COPYRIGHT IAR 2018

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    ALDRICH

175    1. ☐   **BUYER <u>WAIVES THE RIGHT</u> TO HAVE INDEPENDENT INSPECTIONS**
176      Buyer **WAIVES** inspections and relies upon the condition of the Property based upon Buyer's own examination
177      and releases the Seller, the Listing and Selling Brokers and all licensees associated with Brokers from any and
178      all liability relating to any defect or deficiency affecting the Property, which release shall survive the closing.
179      Required FHA/VA or lender inspections are not included in this waiver.
180

181    2. ☒   BUYER <u>**RESERVES THE RIGHT**</u> TO HAVE INDEPENDENT INSPECTIONS (including Lead-Based Paint)
182      Buyer reserves the right to have independent inspections in addition to any inspection required by FHA, VA, or
183      Buyer's lender(s). All inspections are at Buyer's expense (unless noted otherwise or required by lender) by
184      licensed independent inspectors or qualified independent contractors selected by Buyer within the following
185      time periods. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's inspections.
186      Seller must make all areas of the Property available and accessible for Buyer's inspection.
187
188

189      **INSPECTION/RESPONSE PERIOD:** Buyer shall order all independent inspections after acceptance of the
190      Purchase Agreement. Buyer shall have _____**10**_____ days beginning the day following the date of acceptance
191      of the Purchase Agreement to respond to the inspection report(s) in writing to Seller (see "Buyer's Inspection
192      Response").
193

194      Inspections may include but are not limited to the condition of the following systems and components: heating,
195      cooling, electrical, plumbing, roof, walls, ceilings, floors, foundation, basement, crawl space, well/septic, water,
196      wood destroying insects and organisms, lead-based paint (note: intact lead-based paint that is in good
197      condition is not necessarily a hazard), radon, mold and other biological contaminants and/or the following:
198      ANY DEEMED NECESSARY BY BUYER, RESPONSE TIME EXCLUDES ANY LENDER OR REGIONAL REQUIREMENTS.   If the **INITIAL**
199      inspection report reveals the presence of lead-based paint, radon, mold and other biological contaminants, or
200      any other condition that requires further examination or testing, then **Buyer shall notify Seller and have**
201      _____**10**_____ **additional days from the deadline listed above to order, receive and respond in writing to**
202      **all inspection reports.**
203

204      **If the Buyer does not comply with any Inspection/Response Period or make a written objection to any**
205      **problem revealed in a report within the applicable Inspection/Response Period, the Property shall be**
206      **deemed to be acceptable. If one party fails to respond or request in writing an extension of time to respond**
207      **to the other party's Independent Inspection Response, then that inspection response is accepted.** A timely
208      request for extension is not an acceptance of the inspection response, whether or not granted. A REASONABLE
209      TIME PERIOD TO RESPOND IS REQUIRED TO PREVENT MISUSE OF THIS ACCEPTANCE PROVISION.
210      Factors considered in determining reasonable time periods include, but are not limited to, availability of responding
211      party to respond, type and expense of repairs requested and need of responding party to obtain additional opinions
212      to formulate a response.
213

214      If Buyer reasonably believes that the Inspection Report reveals a **DEFECT** with the Property (under Indiana law,
215      **"Defect" means a condition that would have a significant adverse effect on the value of the Property, that**
216      **would significantly impair the health or safety of future occupants of the Property, or that if not repaired,**
217      **removed, or replaced would significantly shorten or adversely affect the expected normal life of the**
218      **premises),** and after having given Seller the opportunity to remedy the defect Seller is unable or unwilling to remedy
219      the defect to Buyer's reasonable satisfaction before closing (or at a time otherwise agreed to by the parties), then
220      Buyer may terminate this Agreement or waive such defect and the transaction shall proceed toward closing. BUYER
221      AGREES THAT ANY PROPERTY DEFECT PREVIOUSLY DISCLOSED BY SELLER, OR ROUTINE
222      MAINTENANCE AND MINOR REPAIR ITEMS MENTIONED IN ANY REPORT, SHALL NOT BE A BASIS FOR
223      TERMINATION OF THIS AGREEMENT.
224

225    3. ☐   **PROPERTY IS SOLD "AS IS".** See attached Addendum.
226

227 N.   **LIMITED HOME WARRANTY PROGRAM:**
228      Buyer acknowledges the availability of a LIMITED HOME WARRANTY PROGRAM with a deductible paid by Buyer
229      which ☐ **will** ☒ **will not** be provided at a cost not to exceed $ _____ charged to ☐ **Buyer** ☐ **Seller**
230      **and ordered by** ☐ **Buyer** ☐ **Seller.** Buyer and Seller acknowledge this LIMITED HOME WARRANTY PROGRAM may
231      not cover any pre-existing defects in the Property nor replace the need for an independent home inspection. Broker
232      may receive a fee from the home warranty provider and/or a member benefit. The Limited Home Warranty Program is a
233      contract between Buyer/Seller and the Home Warranty Provider. The Parties agree that Brokers and their companies
234      shall be released and held harmless in the event of claims disputes with the Home Warranty Provider.
235

*JA* (line 206)
*JA* (line 214)

---

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     ALDRICH

236 O.  **DISCLOSURES: (Check one)**
237     1.  Buyer ☐ **has** ☒ **has not** ☐ **not applicable** received and executed SELLER'S RESIDENTIAL REAL ESTATE
238         SALES DISCLOSURE.
239 *JA*  2.  Buyer ☐ **has** ☒ **has not** ☐ **not applicable** received and executed a LEAD-BASED PAINT CERTIFICATION
240         AND ACKNOWLEDGEMENT.
241
242 P.  **TITLE APPROVAL:** Prior to closing, Buyer shall be furnished with ☒ **a title insurance commitment for the**
243     **most current and comprehensive ALTA Owner's Title Insurance Policy available** in the amount of the purchase price or
244     ☐ **an abstract of title continued to date**, showing marketable title to Property in Seller's name. Seller must convey title free
245     and clear of any encumbrances and title defects, with the exception of any mortgage assumed by Buyer and any restrictions
246     or easements of record not materially interfering with Buyer's intended use of the Property. A title company, at Buyer's
247     request, can provide information about availability of various additional title insurance coverages and endorsements and the associated
248     costs.
249
250     **Owner's Title Insurance Premium** and that portion of Title Service Fees incurred to prepare the Owner's Policy
251     (including title search and examination and commitment preparation), to be paid by ☐ **Buyer (included in allowance,**
252     **if provided)** ☒ **Seller** ☐ **Shared equally.**
253
254     **Lender's Title Insurance Premium** and that portion of Title Service Fees incurred to prepare the Lender's Policy
255     (including title search and examination and commitment preparation), if applicable, to be paid by ☒ **Buyer (included in**
256     **allowance, if provided)** ☐ **Seller** ☐ **Shared equally** ☐ **Other** _____
257
258
259     The parties agree that ☒ **Seller** ☐ **Buyer** will select a title insurance company to issue a title insurance policy and will
260     order the commitment ☒ **immediately** or ☐ **other:** _____
261
262
263     Pursuant to Federal and State Law, Seller cannot make Seller's selection of a title insurance provider a condition of this
264     Agreement.
265
266     Seller agrees to pay the cost of obtaining all other documents necessary to perfect title (including the cost of the deed
267     and vendor's affidavit), so that marketable title can be conveyed.
268
269 Q.  **TAXES: (Check appropriate paragraph number)**
270     ☐ **1.**  Buyer will assume and pay all taxes on the Property beginning with the taxes due and payable
271         on _____, _____, and all taxes due thereafter. At or before closing, Seller
272         shall pay all taxes for the Property payable before that date.
273     ☒ **2.**  All taxes that have accrued for any **prior calendar year** that remain unpaid shall be paid by Seller
274         either to the County Treasurer and/or the Buyer in the form of a credit at closing. All taxes that have accrued
275         for the **current calendar year** shall be prorated on a calendar-year basis as of the day immediately prior to the
276 *JA*     Closing Date.
277
278     **For purposes of paragraph 1 and 2:** For the purpose of determining the credit amount for accrued but unpaid
279     taxes, taxes shall be assumed to be the same as the most recent year when taxes were billed based upon *certified* tax
280     rates. This shall be a final settlement.
281
282     ☐ **3. FOR RECENT CONSTRUCTION OR OTHER TAX SITUATIONS.** Seller will give a tax credit of
283     $ _____ to Buyer at closing. This shall be a final settlement.
284
285 **WARNING: THE SUCCEEDING YEAR TAX BILL FOR RECENTLY CONSTRUCTED HOMES OR FOLLOWING**
286 **REASSESSMENT PERIODS MAY GREATLY EXCEED THE LAST TAX BILL AVAILABLE TO THE CLOSING AGENT.**
287
288 **Buyer acknowledges Seller's tax exemptions and/or credits may not be reflected on future tax bills.**
289
290 **Buyer may apply for current-year exemptions/credits at or after closing.**
291
292 R.  **PRORATIONS AND SPECIAL ASSESSMENTS:** Insurance, if assigned to Buyer, interest on any debt assumed or
293     taken subject to, any rents, all other income and ordinary operating expenses of the Property, including but not limited
294     to, public utility charges, shall be prorated as of the day immediately prior to the Closing Date. Seller shall pay any
295     special assessments applicable to the Property for municipal improvements previously made to benefit the Property.
296     Seller warrants that Seller has no knowledge of any planned improvements which may result in assessments and that
297     no governmental or private agency has served notice requiring repairs, alterations or corrections of any existing
298     conditions. Public or municipal improvements are not completed as of the date above but which will result in a

**15333 Towne Gardens ct, Huntertown, IN  46748**

(Property Address)
**Page 5 of 8    (Purchase Agreement)**                    *JA*
COPYRIGHT IAR 2018

lien or charge shall be paid by Buyer. Buyer will assume and pay all special assessments for municipal improvements completed after the date of this Agreement.

S. **TIME:** Time is of the essence. Time periods specified in this Agreement and any subsequent Addenda to the Purchase Agreement are calendar days and shall expire at 11:59 PM of the date stated unless the parties agree in writing to a different date and/or time.

**Note: Seller and Buyer have the right to withdraw any offer/counter offer prior to written acceptance and delivery of such offer/counter offer.**

T. **HOMEOWNERS ASSOCIATION/CONDOMINIUM ASSOCIATION ("Association"):** Documents for a **mandatory** membership association shall be delivered by the Seller to Buyer within ___NA___ days after acceptance of this Agreement, but not later than 10 days prior to closing pursuant to I.C. 32-21-5-8.5. Brokers are not responsible for obtaining or verifying this information. If the Buyer does not make a written response to the documents within ___NA___ days after receipt, the documents shall be deemed acceptable. In the event the Buyer does not accept the provisions in the documents and such provisions cannot be waived, this Agreement may be terminated by the Buyer and the earnest money deposit shall be refunded to Buyer promptly. Any approval of sale required by the Association shall be obtained by the Seller, in writing, within ___NA___ days after Buyer's approval of the documents. Fees charged by the "Association", or its management company, for purposes of verification of good standing and/or transfer of ownership shall be shared equally by Buyer and Seller. Start-up or one time reserve fees, if any, shall be paid by Buyer.

**Buyer acknowledges that in every neighborhood there are conditions which others may find objectionable. Buyer shall therefore be responsible to become fully acquainted with neighborhood and other off-site conditions that could affect the Property.**

U. **ATTORNEY'S FEES:** Any party to this Agreement who is the prevailing party in any legal or equitable proceeding against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

V. **ADDITIONAL PROVISIONS:**

1. Unless otherwise provided, any prorations for rent, taxes, insurance, damage deposits, association dues/assessments, or any other items shall be computed as of the day immediately prior to the Closing Date.

2. Underground mining has occurred in Indiana, and Buyers are advised of the availability of subsidence insurance. Broker is not responsible for providing or verifying this information.

3. The Indiana State Police has created a registry of known meth contaminated properties which can be found at www.in.gov/meth. Click on "Clan Lab Addresses." Broker is not responsible for providing or verifying this information.

4. The Indiana Sheriff's Sex Offender Registry (www.indianasheriffs.org) exists to inform the public about the identity, location and appearance of sex offenders residing within Indiana. Broker is not responsible for providing or verifying this information.

5. Conveyance of this Property shall be by general Warranty Deed, or by **AS PER TC, AND ACCEPTED BY BUYER/LENDER** subject to taxes, easements, restrictive covenants and encumbrances of record, unless otherwise agreed.

6. If it is determined Seller is a "foreign person" subject to the Foreign Investment in Real Property Tax Act, Seller will pay applicable tax obligation.

7. Any notice required or permitted to be delivered shall be deemed received when personally delivered, transmitted electronically or digitally or sent by express courier or United States mail, postage prepaid, certified and return receipt requested, addressed to Seller or Buyer or the designated agent of either party.

8. This Agreement shall be construed under and in accordance with the laws of the State of Indiana and is binding upon the parties' respective heirs, executors, administrators, legal representatives, successors, and assigns.

**15333 Towne Gardens ct, Huntertown, IN 46748**
(Property Address)
**Page 6 of 8    (Purchase Agreement)**
COPYRIGHT IAR 2018

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com           ALDRICH

*JA*

9. In case any provision contained in this Agreement is held invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement.

10. This Agreement constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent.

11. All rights, duties and obligations of the parties shall survive the passing of title to, or an interest in, the Property.

12. Broker(s) may refer Buyer or Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker(s) does not guarantee the performance of any service provider. Buyer and Seller are free to select providers other than those referred or recommended to them by Broker(s). The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with any service provider.

13. By signing below, the parties to this transaction acknowledge:  1)  receipt of a copy of this Agreement; and 2) information regarding this transaction may be published in a listing service, Internet or other advertising media.

14. Any amounts payable by one party to the other, or by one party on behalf of the other party, shall not be owed until this transaction is closed.

15. Buyer and Seller consent to receive communications from Broker(s) via telephone, U.S. mail, email, text message and facsimile at the numbers/addresses provided to Broker(s) unless Buyer and Seller notify Broker(s) in writing to the contrary.

16. Buyer discloses to Seller that Buyer holds Indiana Real Estate License # <u>NOT APPLICABLE</u>                .

17. Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.

W. **FURTHER CONDITIONS (List and attach any addenda):**  <u>1. UTILITIES & HEAT ARE TO REMAIN ON OR PROPERTY IS TO BE WINTERIZED IN A TIMELY MANNER TO PROTECT FROM DAMAGE.  2. AT CLOSING PROPERTY IS TO BE IN SIMILAR CONDITION AS WHEN BUYER INITIALLY TOURED PROPERTY. 3. BUYER MAY WITHDRAW OFFER AND RECEIVE FULL REFUND OF ALL DOWN PAYMENTS SHOULD THE PROPERTY BECOME DAMAGED, VANDALIZED OR NEGATIVELY IMPACTED. 4. BUYER IS RESPONSIBLE FOR VERIFYING AND OBTAINING  HOA INFORMATION.  5. THE 10 DAY INSPECTION TIME PERIOD SHALL COMMENCE UPON BUYERS NOTIFICATION OF SHORT SALE APPROVAL, NOT INITIAL ACCEPTANCE OF OFFER. 6. THERE ARE NO BANKRUPTCY ESTATE FEES OR ANY OTHER SELLER FEES DUE FROM BORROWER IN ADDITION TO THE PURCHASE PRICE. 7. EARNEST MONEY WILL BE WIRED FROM BUYER TO ESCROW AGENT WITHIN 2 BUSINESS DAYS OF NOTIFICATION OF OFFER ACCEPTANCE.</u>

X. **CONSULT YOUR ADVISORS:** Buyer and Seller acknowledge they have been advised that. prior to signing this document, they may seek the advice of an attorney for the legal or tax consequences of this document and the transaction to which it relates. In any real estate transaction, it is recommended that you consult with a professional, such as a civil engineer, environmental engineer, or other person, with experience in evaluating the condition of the Property.

Y. **ACKNOWLEDGEMENTS: This** ☐ **is** ☒ **is not** a limited agency transaction. Buyer and Seller acknowledge that each has received agency office policy disclosures, has had agency explained, and now confirms all agency relationships. Buyer and Seller further acknowledge that they understand and accept agency relationships involved in this transaction. By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge receipt of a signed copy.

Z. **EXPIRATION OF OFFER:** Unless accepted in writing by Seller and delivered to Buyer **by**           **6:00** ☐ A.M. ☒ P.M. ☐ **Noon, on** _____ **January 18, 2019** _____ , this Purchase Agreement shall be null and void and all parties shall be relieved of any and all liability or obligations.

This Agreement/contract together with any and all subsequent forms, amendments and addenda may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. The parties agree that this Agreement, together with any and all subsequent forms, amendments and addenda may be transmitted between them electronically or digitally. The parties intend that electronically or digitally transmitted signatures constitute original signatures and are binding on  the parties. The original documents shall be promptly delivered, if requested.

**15333 Towne Gardens ct, Huntertown, IN  46748**

420 *JORDAN ALDRICH*    01/03/2019 13:46:48
_____
421 BUYERS SIGNATURE                    DATE        BUYER'S SIGNATURE                    DATE
422
423 **JORDAN  ALDRICH**
_____
424 PRINTED                                         PRINTED
425
426 AA. **SELLER'S RESPONSE: (Check appropriate paragraph number):**
427
428 On _____ , at _____ ☐ A.M. ☐ P.M. ☐ Noon
429
430 ☐ **1.  The above offer is Accepted.**
431
432 ☐ **2.  The above offer is Rejected.**
433
434 ☐ **3.  The above offer is Countered. See Counter Offer. Seller should sign both the Purchase Agreement and the Counter**
435 **Offer.**
436
437
438
439 *Truske    4 Jan 2019*
_____
440 SELLER'S SIGNATURE                   DATE        SELLER'S SIGNATURE                   DATE
441
442 *Martin E. Seifert, Trustee*
_____
443 PRINTED                                         PRINTED
    *Matter of Betty Jo Schaefer,*
    *Bankruptcy Case No. 18-10519*

 Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR)  This form is
restricted to use by members of IAR.  This is a legally binding contract, if not understood seek legal advice.
**Form #02.** Copyright IAR 2018 



**AMENDMENT #  1  TO PURCHASE AGREEMENT**

For use only by members of the Indiana Association of REALTORS®

1  Date: **March 4, 2019**

2  This Amendment is attached to and made a part of Purchase Agreement dated _____ **December 21, 2018** _____,

3  on property known as _____ **15333 Towne Gardens ct** _____

4  _____ **Huntertown** _____, Indiana,

5  Zip _____ **46748** _____ (the "Property").

6  It is mutually agreed to amend Purchase Agreement as follows: **(check appropriate paragraph letter)**

7  ☐ **A.**  The time for making application(s) for financing necessary to complete the transaction, or approval of

8  mortgage assumption, is extended to _____.

9  ☐ **B.**  The time for obtaining favorable commitment(s) for financing necessary to complete the transaction, or

10  approval of mortgage assumption, is extended to _____.

11  ☐ **C.**  The time for closing the transaction is extended to _____.

12  ☐ **D.**  The time that Seller may retain possession of the Property is changed to _____

13  _____.

14  ☐ **E.**  The time for making any responses to inspections is extended to _____.

15  ☐ **F.**  The time for delivering homeowner association/condominium documents is extended to _____

16  _____.

17  ☒ **G.**  Other changes in the Purchase Agreement: _____

18  1. BUYER ACCEPTS SELLER'S COUNTER OFFER INCREASING PURCHASE PRICE TO $133,600.

19  2. BUYER TO PAY MUNICIPAL LIEN SEARCH UP TO $400 (OR WHATEVER ACTUAL COST IS UP TO

20  $400).

21  3. BUYER TO PAY $295 CLOSING COORDINATION FEE TO OCEAN TITLE.

22  4. LOCAL CLOSING AGENT TO COORDINATE AND CLOSE TRANSACTION IS TO BE FIDELITY TITLE CO,

23  ANGOLA, INDIANA, AT BUYERS EXPENSE.

24  _____

25  _____

26  _____

27  _____

28  _____

29  **All other terms and conditions of the Purchase Agreement remain unchanged.**

30  By signature below, the parties acknowledge receipt of a signed copy of this Amendment.

31  *JORDAN ALDRICH*      03/04/2019  20:09:00

32  BUYER'S SIGNATURE                    DATE        BUYER'S SIGNATURE                    DATE

33  **JORDAN ALDRICH**

34  PRINTED   *M. J. Seifert, trustee*        PRINTED

35  *Martin E. Seifert, Trustee*

36  SELLER'S SIGNATURE                   DATE        SELLER'S SIGNATURE                   DATE
   *Matter of Betty Jo Schaefer*

37  *Bankruptcy Case no. 18-10519*

38  PRINTED                                         PRINTED
   *Subject to Bankruptcy Court Approval*

Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice. **Form #20A.** Copyright IAR 2019

**SHORT SALE ADDENDUM**
**To the Agreement of Sale**

This is an Addendum to the Agreement of Sale dated __1/4/19_____ by and between
__Martin Seifert, BK Trustee for the estate of Betty Schaefer__ ("**Seller[s]**") and __Jordan Aldrich_____
_____ ("**Buyer[s]**") for the property located at _____
__15333 TOWNE GARDENS CT HUNTERTOWN, IN 46748__ ("**Property**"). The terms herein supersedes the
provisions in the Standard Agreement of Sale.

1. **SHORT SALE APPROVAL:** This Agreement is contingent upon Seller's receipt of written consent from all
   existing secured lenders and lien holders ("**Short-Sale Lenders**" or "**SSL**"), no later than __90 days__ ("**Short-Sale Contingency Date**"), to reduce their respective loan balances by an amount sufficient to permit the
   proceeds from the sale of the Property to pay the existing balances on loans secured by the Property, real
   property taxes, brokerage commissions, closing costs, and other monetary obligations the Agreement
   requires Seller to pay at Settlement (including, but not limited to, escrow charges, title charges, transfer
   taxes, pro-rations, and repairs) without requiring Seller to place any funds into escrow, with lender/s' waiver
   of any rights to a deficiency.  If Seller fails to give Buyer written notice of all existing Short-Sale Lenders'
   consent by the Short-Sale Contingency Date, either Seller or Buyer may cancel the Agreement in writing,
   and Buyer shall be entitled to a return of any deposit.  Seller shall reasonably cooperate with existing Short-
   Sale Lenders in the short-sale process and is aware that there may be credit or tax consequences resulting
   from an approved Short-sale.  Seller understands that no cash proceeds will be received by Seller from this
   sale unless, and only to the extent, allowed by Seller's lender/s.

2. **TIME PERIODS:** Time periods in the Agreement for contingencies, covenants and other obligations shall begin
   the day after Seller delivers to Buyer a written notice of Short-Sale Lenders' consent with the exception of
   inspection contingencies, which must be completed in fifteen (15) days.

3. **NO ASSURANCE:** Buyer and Seller understand that Short-Sale Lenders (i) are not obligated to accept a
   short-sale; (ii) may modify dates and time periods specified in the Agreement; and (iii) may accept offers not
   of the Seller's choosing. Buyer & Seller acknowledge that Broker is not responsible for any act, omission, or
   decision by any Short-Sale Lender.

4. **BUYER AND SELLER COSTS:** Buyer and Seller acknowledge that each may incur costs in connection with
   rights or obligations under the Agreement. These costs may include, but are not limited to, payments for loan
   applications, inspections, appraisals, and other reports. Such costs will be the sole responsibility of the party
   incurring them without regard to the acceptance or rejection of the proposed Short-Sale by the Lender.

5. **INSPECTION REPAIRS:** Buyer understands that Property is being sold in its current (**"AS-IS"**) condition;
   and any repair required (including government-required repairs), if any, shall be the responsibility of Buyer.
   **Buyer shall be responsible for ordering any required Use and Occupancy inspection. Buyer, at
   Buyer's expense, shall arrange to empty the sewer system (if applicable) and arrange for all utilities
   to be turned on to conduct its inspection, and to restore the same to its previous condition. If
   property is in a flood zone, it would be Buyer's responsibility to get the elevation certificate.**

6. **OTHER OFFERS:** If Buyer's offer is accepted by Seller, Seller may – on its own, or as required by Short-
   Sale Lender -- continue to market the Property despite acceptance of Buyer's offer, and hold other offers
   received as "back up" offers in the event Buyer decides to terminate the Agreement.

7. **CREDIT, LEGAL AND TAX ADVICE:** Broker has advised Buyer and Seller to consult with legal and tax
   counsel prior to signing this Addendum relating to a Short-Sale.  Broker cannot give legal or tax advice.

By signing below Buyer and Seller acknowledge that each has read, understand, accept and received a
copy of this Addendum.

_____        _____
Seller                        Date      Seller                        Date

_____        _____
Buyer                         Date      Buyer                         Date



# Trustee Transaction Overview

Property Address:

**15333 TOWNE GARDENS CT HUNTERTOWN, IN 46748**

Seller Name (Trustee Name):

**Trustee Martin Seifert, BK Trustee for the Estate of Betty Schaefer**

---

| | |
|---:|:---|
| **CASE NUMBER:** | 18-10519 |
| **LIST PRICE:** | $136,000 |
| **OFFER PRICE:** | $130,000 |
| **PROPOSED BANKRUPTCY ESTATE FEE:** | $3,900 to $6,500 |
| (3%) to (5%) | |

---

Bankruptcy Estate Fees are determined by Banks/Servicers/Investor guidelines based on a case by case situation and the range of 3% & 5% of sales price meets most guidelines.  We typically ask for 5% and negotiate where necessary.

---

_(signature)_ , trustee                    4 Jan 2019

**Trustee Signature**                           **Date**

Martin E. Seifert, trustee
Matter of Betty Jo Schaefer
Bankruptcy Case No. 18-10519



# Purchase & Sale of Real Property Contract Addendum

| 15333 TOWNE GARDENS CT HUNTERTOWN, IN 46748 |
| --- |

## Property Address

1. Buyer acknowledges that this property is subject to Short Sale Lender or Servicer Approval as applicable and Bankruptcy Court Approval of the sale or transfer of the subject property.

2. The Bankruptcy Estate Fee is to be paid from the Sellers proceeds or as a buyer's premium and said Fee shall be made payable to the Bankruptcy Estate.

3. Buyer acknowledges that the property is sold "AS IS". Absolutely no repairs will be authorized. Seller is unable to remove any debris or personal property left on the Property nor warrants that any appliances or other personal property will be left on the Property or transferred as part of this transaction.

4. Seller shall make no concessions and can pay no closing costs to, for or on behalf of the buyer.

5. The parties agree that the **ESCROW AGENT** for this transaction is:

| | |
| --- | --- |
| **ESCROW AGENT** | SingleSource |
| **ADDRESS** | 1000 Noble Energy Drive Suite 300 |
| **CITY, STATE, ZIP** | Canonsburg, PA 15317 |
| **PHONE** | 866-620-7577 |
| **EMAIL** | cporto@singlesourceproperty.com |

The initial earnest money deposit in the amount of 1% of the purchase price is due to escrow agent within 48 hours of seller's acceptance of the contract. The second (2nd) earnest money deposit in the amount of 9% of the purchase price for cash transactions (total earnest money deposits equal 10% for cash transactions) or 4% of the purchase price for financed transactions (total earnest money deposits equal 5% for financed transactions) are due to escrow agent within 72 hours of the issuance of the short sale approval letter by the short sale lender or servicer. All earnest money deposits are to be deposited with escrow agent in the form of a cashier's check or bank wire.

*JA*

6.    The CLOSING AND TITLE AGENT for this transaction shall be:

| CLOSING AND TITLE AGENT | SingleSource |
| --- | --- |
| ADDRESS | 1000 Noble Energy Drive Suite 300 |
| CITY, STATE, ZIP | Canonsburg, PA 15317 |
| PHONE | 866-620-7577 |
| EMAIL | cporto@singlesourceproperty.com |

Closing and Title Agent duties shall include, but are not limited to: drafting estimated settlement statements upon execution of contract and as requested or required by the short sale lender or servicer in order to obtain the short sale approval(s) for the subject transaction (including all seller side fees and pro-rations), working with BK Global in regard to obtaining said short sale approval(s) and to clear any and all liens that may encumber the property or title to the subject property (if any), and coordinating the closing of this transaction with the real estate agents or brokers as applicable and the parties to the transaction including the Trustee for the selling Bankruptcy Estate.

7.    The Seller in this transaction is exempt from providing the Homeowner's Association documents to Buyer as this is a court-ordered sale transaction. Buyer will be solely responsible for any application, transfer, capital contributions and initial membership fees charged by or due to any Association(s) or Management Company. Buyer is aware it may take up to 10 days to receive a response from the Federal Bankruptcy Trustee (Seller).

8.    If the applicable Short Sale Approval(s) is/are not issued within 120 days after the Seller's contract acceptance date, Buyer may cancel the Residential Purchase Agreement for any reason without penalty.

9.    Buyer agrees to close this transaction within 45 days of issuance of the short sale approval and agrees to close pursuant to the terms included in the Order entered by the Bankruptcy Court approving the sale transaction and pursuant to the instructions of the Federal Bankruptcy Trustee.

10.    Buyer shall be responsible for connecting any utilities necessary to perform inspections requested and any related costs as part of any due diligence period or inspection. Buyer shall use this period to satisfy themselves of all mechanical, structural and/or functional related concerns regarding the property. Buyer shall have the same amount of time to obtain, review, and satisfy themselves of any association rules, regulations, requirements and/or fees, if applicable. Seller will not pay any upfront expenses related to plowing the road for access to the property. Should the Buyer require the septic system be pumped and inspected, that shall be done at the buyer's expense. Buyer shall release the inspection contingency within ten (10) days of seller's acceptance of the Purchase and Sale Contract.

11.    Any issues regarding permitting or open or expired permits will be the responsibility of the buyer and clearance or closure of the same will not be part of the contract and will not be a requirement of closing.

*JA*

*JA*

12.    Buyer acknowledges that the seller may not have access to garage remotes, mailbox keys or access related keys to the property. Seller will tender any items available at the close of escrow but shall not be liable to provide items not in his/her possession.

13.    Buyer shall immediately disclose if he/she is related to the debtor or seller. Buyer understands that most lenders and/or servicers or investors require an Arm's Length Disclosure to be signed by the parties as a condition of the short sale approval, and some lenders and/or servicers or i investors will not allow a family member or relative to purchase a property in which a debtor or seller related to the buyer has or may have interest.

14.    Should buyer be representing self as an agent, buyer understands that some lenders and/or servicers or investors will not allow buyer(s) to receive any funds from the sale of the property, including commissions.

15.    Offers in the name of a corporation, trust, LLC or partnership will need to show proof of all entity owners and shall provide a copy of the articles of organization (and operating agreement when applicable) which must provide for who is authorized to sign on behalf of the entity. Buyer understands and acknowledges that once Addendum is executed, the name of the buyer cannot be changed for title, closing or any other purpose due to the Short Sale Approval(s).

16.    Seller will not pay for an Appraisal or Home Warranty.

17.    Buyer understands and agrees that this addendum shall prevail and take precedence where any terms included herein conflict with the original Purchase Agreement.

DATED this 3rd day of JANUARY, 201 9

**Trustee**

Signature

Print Name *Martin E. Seifert Trustee Matter of Betty Jo Schaefer, Bankruptcy Case No. 18-10519*

**Buyer**

*JORDAN ALDRICH*    01/03/2019 01:46 PM EST

Signature

JORDAN ALDRICH

Print Name

**Buyer**

Signature

Print Name

PRE-CLOSING DRAFT

## A. Settlement Statement (HUD-1)

OMB No. 2502-0265

**B. Type of Loan**

| 1. ☐ FHA  2. ☐ RHS  3. ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4. ☐ VA  5. ☐ Conv. Ins. | 190187925-52 | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Jordan Aldrich<br>210 N 050 W<br>Lagrange, IN 46761 | Martin E. Seifert, as Trustee for the<br>Bankruptcy Estate of Betty Jo Schaefer | |

| G. Property Location | H. Settlement Agent   866-620-7577 | Place of Settlement |
|---|---|---|
| 15333 Towne Gardens Ct<br>Huntertown, IN 46748 | SingleSource Property Solutions, LL<br>SingleSource Property Solutions, LLC<br>1000 Noble Energy Drive<br>Suite 300<br>Canonsburg, PA 15317 | I. Settlement Date   06/17/19<br>Disbursement Date   06/17/19 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | 133,600.00 | 401. Contract sales price | 133,600.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 1,588.76 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | 135,188.76 | **420. Gross Amount Due to Seller** | 133,600.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | 1,300.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 16,816.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan<br>First Mortgage | 115,050.74 |
| 205. | | 505. Payoff of second mortgage loan<br>Second Mortgage | |
| 206. | | 506. Payoff Above and Beyond Community Mgmt, Inc | 500.10 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes    07/01/18 to 06/17/19 | 1,233.16 | 511. County taxes    07/01/18 to06/17/19 | 1,233.16 |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | 2,533.16 | **520. Total Reduction Amount Due Seller** | 133,600.00 |
| **300. Cash At Settlement from/to Borrower** | | **600. Cash At Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | 135,188.76 | 601. Gross amount due to seller (line 420) | 133,600.00 |
| 302. Less amounts paid by/for borrower (line 220) | ( 2,533.16) | 602. Less reductions in amount due seller (line 520) | ( 133,600.00) |
| **303. Cash** ☐ From ☐ To Borrower | 132,655.60 | **603. Cash** ☐ To ☐ From Seller | 0.00 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

POC-B, Paid out of Closing by Buyer POC-S, Paid out of Closing by Seller

**Exhibit B**

**PRE-CLOSING DRAFT**

13 37 59 05-14-2019

| L. Settlement Charges | | | |
|---|---|---|---|
| **700. Total Real Estate Broker Fees** | $5,344.00 | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
| Division of Commission (line 700) as follows: | | | |
| 701. $2,672.00                to Coldwell Banker Roth Wehrly | | | |
| 702. $2,672.00                to Pumpkin Vine Realty, Inc | | | |
| 703. Commission paid at Settlement | | | 5,344.00 |
| 704. Commission paid at Settlement  to BKG | | | 2,672.00 |
| **800. Items Payable In Connection With Loan** | | | |
| 801. Our origination charge | $           (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | $           (from GFE #2) | | |
| 803. Your adjusted origination charges | (from GFE #A) | | |
| 804. Appraisal fee to | (from GFE #3) | | |
| 805. Credit Report to | (from GFE #3) | | |
| 806. Tax service to | (from GFE #3) | | |
| 807. Flood certification | (from GFE #3) | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | |
| 901. Daily interest charges from  to  @ $/day | (from GFE #10) | | |
| 902. Mortgage insurance premium for  months to | (from GFE #3) | | |
| 903. Homeowner's insurance for  years to | (from GFE #11) | | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | | |
| 1001. Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. Homeowner's Insurance       months @ $          per month      $ | | | |
| 1003. Mortgage insurance       months @ $          per month      $ | | | |
| 1004. Property taxes       months @ $          per month      $ | | | |
| 1005.       months @ $          per month      $ | | | |
| 1006.       months @ $          per month      $ | | | |
| 1007.       months @ $          per month      $ | | | |
| 1008. Aggregate escrow adjustment       $ | | | |
| **1100. Title Charges** | | | |
| 1101. Title services and lender's title insurance | (from GFE #4) | 0.00 | |
| 1102. Settlement or closing fee to SingleSource Property Soluti... $ | | 450.00 | 900.00 |
| 1103. Owner's title insurance to SingleSource Property Solutions LLC | (from GFE #5) | 313.76 | |
| 1104. Lender's title insurance to SingleSource Property Solutio... $ | | | |
| 1105. Lender's title policy limit       $ | | | |
| 1106. Owner's title policy limit       $133,600.00 | | | |
| 1107. Agent's portion of the total title insurance premium | $ | | |
| 1108. Underwriter's portion of the total title insurance premium | $ | | |
| 1109. Courier Fee to SingleSource Property Solutions LLC | | 25.00 | 25.00 |
| 1110. Search Fee to SingleSource Property Solutions LLC | | | 250.00 |
| 1111. Wire Fee to SingleSource Property Solutions LLC | | 10.00 | |
| 1112. TIEF Policy Fee to Chicago Title | | 5.00 | |
| 1113. Closing Protection Letter to Chicago Title | | 50.00 | 25.00 |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Government recording charges | (from GFE #7) | 25.00 | |
| 1202. Deed $25.00      Mortgage $          Release $ | | | |
| 1203. Transfer taxes | (from GFE #8) | 15.00 | |
| 1204. City/county tax/stamps:      Deed $5.00          Mortgage $ | | | |
| 1205. State tax/stamps:      Deed $10.00          Mortgage $ | | | |
| 1206. | | | |
| 1207.       $ | | | |
| 1208.       $ | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Required services that you can shop for | (from GFE #6) | | |
| 1302. Trustee Liability Insurance to Martin E. Seifert, as Truste... $ | | | |
| 1303. Record Motion to Sell Order to County Recorder       $ | | | 100.00 |
| 1304. Closing Coordination  to Ocean Title, LLC | | 295.00 | |
| 1305. Municipal Lien Search est. to Martin E. Seifert, as Trustee for the Bankruptcy Estate of Be | | 400.00 | |
| 1306. Bankruptcy Estate Fee  to Martin E. Seifert, as Trustee for the Bankruptcy Estate of Be | | | 7,500.00 |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | 1,588.76 | 16,816.00 |

POC-B, Paid out of Closing by Buyer POC-S, Paid out of Closing by Seller

**PRE-CLOSING DRAFT**

This page is attached to and made part of the Settlement Statement in the matter described on Page 1 of the Settlement Statement.

I have carefully reviewed this Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

Borrower(s) _____ 06/17/19 Seller(s) _____ 06/17/19
               Jordan Aldrich                                                  Martin E. Seifert, as Trustee for the Bankruptcy Estate of
                                                                                  Betty Jo Schaefer

The Settlement Statement which I have prepared is a true and accurate account of funds received and funds disbursed or to be disbursed for this transaction.

                                 06/17/19 _____ SingleSource Property Solutions, LL, Settlement Agent